9 U.S. 92
 5 Cranch 92
 3 L.Ed. 46
 MATTHEWS
v.
ZANE'S LESSEE
 February Term, 1809
 
 1
 ERROR to the supreme court of the state of Ohio for the county of Muskingum, in an action of ejectment brought by Zane's Lessee against Matthews, in which both parties claimed title under the laws of the United States. The question of jurisdiction in this case was settled at last term. (Ante, vol. 4. p. 382.)
 
 
 2
 The remaining question was, whether the plaintiff in error, or the defendant, had the title to the west fraction of section No. 15. in township No. 12. in range No. 13. in the state of Ohio.
 
 
 3
 This question arose upon a special verdict, which stated the following facts.
 
 
 4
 On the 7th of February, 1804, the office of receiver of public moneys at Marietta then being vacant, Matthews applied to the register of the land-office at Marietta, for the purchase of that fraction, who received the application, and gave Matthews a certificate thereof.
 
 
 5
 On the 26th of March, 1804, a register and receiver were appointed for the Zaneville district, and also a receiver of public moneys for the Marietta district, who commenced the duties of his office on the first of May, in that year.
 
 
 6
 After the 12th of May, in the same year, Matthews purchased the land at the Marietta land-office, by making such payments, and receiving such certificates, as are prescribed by law.
 
 
 7
 On the 21st of May, 1804, the land-office was first opened at Zaneville, and the sales of land commenced therein.
 
 
 8
 On the 17th of the same May, a schedule was forwarded from the surveyor-general, purporting to be a complete list of the lands lying within the Zaneville district, which had been before sold at the Marietta land-office, and in which the land in controversy was not included.
 
 
 9
 Subsequent to the passage of the law for the erection of the Zaneville district, and prior to the time when the office of receiver of public moneys for the Marietta district became vacant, two entries were made in the Marietta land-office, of land lying within the Zaneville district, which entries and sales were acknowledged as good and valid by the government of the United States, who considered Matthews's entry as void, and the secretary of the treasury has directed his purchase-money to be repaid to him. The two tracts, the sales of which were confirmed by the government of the United States, were in the surveyor-general's schedule returned as sold at Marietta; but the land in controversy was not included in that schedule, because the register of the land-office at Marietta had not made his return, as by law directed, to the surveyor-general, who had no guide by which to make out the schedule, but the returns of the register. The officers of the Zaneville land-office were directed by the secretary of the treasury to receive the schedule as the only evidence of what land had been sold at Marietta.
 
 
 10
 On the 26th of May, 1804, Zane purchased, at the Zaneville land-office the land in controversy, by making such payments, and receiving such a certificate, as by law are prescribed, at which time Matthews produced his certificate from the register of the Marietta land-office, and gave notice of his having purchased the same land.
 
 
 11
 Zane's purchase was confirmed by the secretary of the treasury.
 
 
 12
 P. B. Key, for the plaintiff in error, contended.
 
 
 13
 1. That the purchase made by Matthews was legal and valid. And,
 
 
 14
 2. That the defendant in error was not entitled to recover.
 
 
 15
 That this subject may be distinctly understood, it may be necessary concisely to state the land system of the United States.
 
 
 16
 In 1785, the old congress passed an ordinance for the survey and sale of public lands in the north-western territory. Seven ranges of townships were laid off, and sales made at New-York, to a considerable extent. The Indian wars that soon followed, closed the sales. But after General Wayne's treaty at Greeneville, in 1795, congress took up the subject again, and in May, 1796, passed an act for appointing a surveyor-general, and directing surveys and sales. Vol. 3. p. 293. These surveys could not be completed till the end of the year 1799. The act of the 10th of May, 1800, vol. 5 p. 174. established the present system, by which four land-offices were to be opened, viz. at Cincinnati, Chilicothe, Marietta, and Steubenville. That at Marietta was for the lands lying east of the sixteenth range of townships, south of the military lands, and south of a line drawn due west from the north-west corner of the first township of the second range to the military lands. A register of the land office, and a receiver of public moneys, was to be appointed for each of the offices. A person wishing to purchase any of the lands was to pay to the treasurer of the United States, or the receiver of public moneys, one twentieth part of the purchase-money besides certain fees, and take his receipt therefor, which he was to carry to the register, who was to enter his application in a book, stating the date of the application, the date of the receipt, and the number of the section, or half section, township and range applied for. No lands were to be sold at less than two dollars an acre, one fourth, including the one twentieth, in forty days, one fourth in two years, one fourth in three years, and the residue in four years, with interest. A discount of 8 per cent. per annum was to be allowed for prompt payment. Upon payment of the whole purchase-money a patent was to be issued by the president of the United States.
 
 
 17
 Thus stood the land system, and the mode of purchasing and acquiring title until congress, desirous of bringing more lands into the market, passed an act on the 3d of March, 1803, vol. 6. p. 291. by the 6th section of which, a new district was created called the Zaneville district, which covered part of the lands in Marietta district, and, among others, the lands in controversy, and certain lands in the military tract which had not been surveyed. This act did not prescribe the time when the land-office should be opened at Zaneville, nor when the officers should be appointed.
 
 
 18
 The first question which presents itself under this law is, did it prevent a continuance of sales at Marietta, of the lands which had been surveyed in that district, and how included in the Zaneville district?
 
 
 19
 We contend it did not.
 
 
 20
 All these laws are to be construed together as forming one system. The two great principles of the system are,
 
 
 21
 Settlement of the western frontier, and revenue to be derived from the sales of the lands.
 
 
 22
 The importance of the first, and the policy of settling the western frontier, are too obvious for illustration. It has been an object of anxiety at all times from the first organization of the union.
 
 
 23
 As an object of revenue it has been the incessant subject of attention, and of primary importance. The proceeds of the sales were in 1790 assigned to the sinking fund. With a view to facilitate sales, the lands have been divided into sections and half sections. Discounts, and abatement of interest, have been allowed on prompt payment. The sale of the western lands, therefore, being a leading object of national policy, it is to be presumed that they were not to cease unless by positive law.
 
 
 24
 There is nothing in the act creating the Zaneville district to prevent a sale at Marietta, before the Zaneville office should be opened.
 
 
 25
 There is nothing repugnant to such a construction. Both acts may so far stand together, and be consistent with each other and with the general policy of the United States.
 
 
 26
 The 5th and 6th sections of the act of 1803, taken together, show that a previous survey was to be made of the unappropriated military lands which were to form a part of the Zaneville district, before the sales could commence there.
 
 
 27
 The 4th section of the act of 1800, gave full powers to the Marietta land-office to sell all the lands within that district.
 
 
 28
 This power exists until destroyed, and cannot be repealed by doubtful implication against the great national policy and the scope of the laws. It was well understood that the Zaneville land-office could not be opened until a survey should be made. Officers were to be appointed; and none were appointed until a year after, because they could not act until the surveys should be completed, and the lands ready for sale.
 
 
 29
 This shows what construction the executive gave to the law. The surveyor-general also returned a list of sales made at Marietta, up to the 17th of May, 1804. All the sales upon that list have been confirmed by the treasury.
 
 
 30
 In the course of the year 1803 a survey was made, and congress, by the act of the 26th of March, 1804, vol. 7. p. 106. § 12. opened the Zaneville land-office on the 21st of May, 1804, and directed the sales to commence there on that day.
 
 
 31
 Is it a reasonable construction to contend that 700,000 acres should be locked up from market for a whole year, when every act of the government demonstrated their anxiety to make sales.
 
 
 32
 The act of 1803 described limits within which as office was erected for future sales, but the opening of that office and proceeding to sell was to be settled by a future law. This was done, and the office directed to go into operation on the 21st of May, 1804. Until that period the office at Marietta might proceed to sell.
 
 
 33
 This construction derives weight from an analegous case, a case also of revenue.
 
 
 34
 Suppose a district, for the collection of duties, divided, and a new port of entry established, and a collector to be appointed, would this put a stop to the entry and collection at the first port until the second office was open for business?
 
 
 35
 If Matthews's purchase had been inserted in the surveyor-general's schedule, it would have been confirmed by the treasury for the same reason that the two other similar sales were confirmed.
 
 
 36
 The reason why it was not upon that schedule was the neglect of the register. Shall the neglect or omission of his duty by an officer of the United States prejudice the claim of an innocent purchaser?
 
 
 37
 The schedule of the surveyor-general was not the only admissible evidence of sales at the Marietta office. There was no statute, nor any principle of law, which made it such. It was a matter in pais, which might be proved by any kind of legal evidence. The register's certificate which Matthews produced at the Zaneville office at the time and place of sale to Zane, was the very best evidence which could then be required; and it ought to have been respected. Zane purchased with a full knowledge of Matthews's title.
 
 
 38
 Harper, contra, contended that the authority to sell at Zaneville was inconsistent with the authority to sell at Marietta; and that consequently the latter was revoked by the former. When the act of March 3, 1803, directed that these lands should be offered for sale at Zaneville, they could no longer be sold elsewhere. The act provides for the appointment of officers to sell. Congress had only to create the office. The president was to appoint the officers, under the general authority given to him by the constitution. If the president did not appoint, that did not prevent the effect of the act. The president cannot dispense with the law, nor suspend its operation.
 
 
 39
 The act of the 26th of March, 1804, vol. 7, p. 106. directs positively that the lands shall be offered for sale at Zaneville on the third Monday of May.
 
 
 40
 No quarter sections or fractions of sections of this land could be sold elsewhere. This act of the 26th of March, 1804, first gave the power to sell the fractions of sections separately. It could not be done at Marietta until the 14th of May, 1804, yet Matthews's purchase was on the 12th, so that even if this land could have been sold at Marietta at all, it could not, on the 12th of May, have been sold separately from a section; nor could have been sold until it had first been offered at public auction.
 
 
 41
 P. B. Key, in reply.
 
 
 42
 The purchase of this fraction was with a whole section, and therefore the fact does not support the argument on the other side.
 
 
 43
 The only questions are whether the authority to sell these lands at the Marietta office ceased before the Zaneville office was opened; and whether the neglect of the register to make a return of this sale to the surveyor-general shall prejudice the claim of the plaintiff in error.
 
 February 16.
 
 44
 MARSHALL, Ch. J. stated the opinion of the court to be that the decision of the court below was correct; that the erection of the Zaneville district suspended the power of sale in the Marietta district.
 
 
 45
 Judgment affirmed.